[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SUPPRESS
In this criminal prosecution in which defendant has been charged with six counts of robbery in the first degree and one count of robbery in the second degree, he has moved to suppress the search warrant issued June 8, 1993 and exclude from evidence any and all items seized under authority of the warrant.
Relying on State v. Barton, 219 Conn. 529 (1991), defendant claims that under the circumstances the facts set forth in the affidavit section of the search warrant fail to establish probable cause. For reasons hereinafter stated the motion is denied.
The motion does not specify any particular infirmity in the affidavit. In oral argument, however, defendant limited his argument to a claim that the credibility of the confidential informant and the reliability of his information could not properly be determined from the affidavit. Accordingly the court has limited its decision to a consideration of this claim.
The affidavit was sworn to by two regular members of the Norwich Police Department who averred in the affidavit that they had responsibilities for investigating major crimes CT Page 4232 including robberies and larcenies, and that they had attended schools and seminars relating to the investigation of such crimes.
A household burglary was mentioned in the affidavit. The affiants derived their knowledge of such crime from other investigators in the same department.
It was stated that the burglary occurred on April 6, 1993. Jewelry, and a high standard super-matic pistol and a blue-finished Smith and Wesson .357 magnum revolver, "Highway Patrolman" with a 6 inch barrel were stolen.
It was further stated that a robbery at Rena's Pizza occurred on May 2, 1993. The robber was described by eye witnesses as a white male wearing a dark colored ski mask over his face. He was approximately 5'8 to 5'10 inches tall, stocky build with blue eyes and curly brown hair sticking out from beneath the ski mask. He was armed with a long barrel dark colored revolver.
In the course of the robbery the perpetrator ordered a male employee to lie on the floor. While holding the employees at gunpoint the perpetrator took approximately $1,391.00.
Norwich Police were called upon to investigate the report of another armed robbery at the Workingman's Club. It was reported that the perpetrator entered the front door of the club after being allowed access through an electronic door lock. The physical description of the perpetrator and the weapon was similar to that given for the robbery of the pizza parlor. The robber was described as a white male, mid to late thirties, 5'8 inches tall, weighing 200 pounds with a stocky built. The perpetrator, while holding the barmaid at gunpoint, took approximately $1,528.00 in cash from the register and safe. A patron in the bar told the officers that the perpetrator shouted to him, "don't look at me. Turn Around."
The affidavit further stated that since May 17, 1993 an additional five armed robberies were reported in the area. In each of the robberies the description of the perpetrator and his weapon was similar to the above mentioned robberies. CT Page 4233
It was stated in the affidavit that on June 7, 1993 one of the affiants was contacted by a confidential informant. The officers stated that the information provided by the informant had been investigated and corroborated by the affiants. The affiants further stated that the informant was associated with the criminal milieu and that although he was not personally involved with the incidents set forth in the affidavit, he had been involved with similar types of criminal activities in the past and was familiar with the practices and deceptions utilized by "fellow criminals."
In the next paragraph it is averred that the informant told one of the officers that at the beginning of May, 1993, he was at defendant's home 14 Otrobando Avenue (the premises for which the warrant was sought). The informant stated that he had known defendant for a period of time and had been at his residence on more than one occasion.
The affidavit states that defendant told the informant that defendant had broken into a house in the Norwichtown section of Norwich, and during the course of the burglary he stole a .357 cal. revolver which he later used during armed robberies at a nearby pizza shop and a bar in the Greenmanville section of Norwich. The informant further stated that the defendant related to him details of the robberies including the amount of money stolen.
It is stated in the affidavit that while at defendant's home defendant showed the informant a Smith and Wesson .357 cal. magnum blue-finish revolver with a 6 inch barrel with something "Patrolman" stamped on the barrel and stated that he used this weapon in the robberies.
The location of the robberies and the burglaries, as well as details of the robberies including the weapon used and the amount stolen as related to the informant by defendant and set forth in the affidavit, correspond with the information which the police had concerning these crimes.
Details of the crime were not commonly known the affidavit stated and could only have been known by a person with personal knowledge of the crimes.
The affidavit also states that defendant's police records describe him as approximately 5'8" tall, 195 pounds with a CT Page 4234 stocky build, curly brown hair and lovely blue eyes.
By his motion defendant claims that the warrant does not establish probable cause since the reliability of the informant cannot be established.
"[P]robable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Internal quotation marks omitted; citations omitted.) State v. Morrill,205 Conn. 560, 564-65 (1987)).
In State v. Kimbro, 197 Conn. 219, 233 (1985) our Supreme Court stated that the issuing magistrate's determination should be reviewed under the two prong Aguilar-Spinelli test.
"The Aguilar-Spinelli test . . . consists of two prongs:
"`The issuing [judge] must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable.'" State v. Morrill, supra, 566.
In State v. Barton, 219 Conn. 529, 534 (1991) our Supreme Court determined that the standards mandated in Kimbro resulted at times in unduly technical readings of warrant affidavits. In Barton the court overruled Kimbro and adopted the "totality of circumstance" analysis of Illinois v. Gates,462 U.S. 213, 103 S.Ct. 2317 76 L.Ed.2d 527, reh. denied,463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). Id., 546.
Using the totality of circumstances analysis the veracity or reliability and the basis of knowledge inquiries with respect to the confidential informant formulated in Aguilar remain highly relevant. Barton, supra, 540. Even under the Aguilar-Spinelli test where the reliability of the confidential informant was insufficient, probable cause would still be found if the warrant application affidavit set forth other circumstances — typically independent police CT Page 4235 corroboration of certain details provided by the informant — that bolster the deficiencies State v. Ruscoe, 212 Conn. 223,229 (1989), cert. denied, 493 U.S. 1084, 110 S.Ct. 1144,107 L.Ed.2d 1049 (1990).
"Under the analysis approved in Gates `[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstance set forth in the affidavit before him, including the "veracity" and the "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Barton, supra, 537.
On a motion to suppress the reviewing court does not conduct a de novo examination of the affidavit, but uses a substantial basis method of review. State v. Diaz, 226 Conn. 514,548 (1993). The substantial basis test means that the reviewing court must "give deference to — must take as a given — all reasonable inferences drawn by the issuing judge, and then decide whether, based upon the facts explicitly stated in the affidavit, supplemented by those reasonable inferences, the affidavit establishes probable cause" Diaz, supra, 527.
Applying the applicable rules of law as above stated to the present case the motion to suppress must be denied.
The issue presented here is whether the issuing judge could reasonably have inferred that the informant was credible and that his information was reliable.
There is little specific in the affidavit which indicates that the informant was reliable. There are, however, other circumstances which tend to bolster the issuing judge's conclusion of reliability. The description of the burglary and the pistol, the details of the robberies, the amounts taken as well as the times of occurrence were all corroborated by independent police investigations. Defendant admits to an independent police corroboration of the facts related by the informant. He argues, however, that it could also be concluded that the informant himself was the perpetrator or an accomplice and that his knowledge of the details of the crime was based on his participation therein and not upon admissions by defendant.
While the issuing magistrate possibly could have CT Page 4236 concluded that the informant was unreliable on this basis, he did not do so and it must be found that his conclusion was not unreasonable. In giving the statement the informant related matters which were against his interest and he placed himself at risk of conviction under 53a-156 if the statement proved false. A substantial confirming factor, supported by police records, and over which the informant had no control, was the description of the perpetrator by the victims which match the physical description of defendant in the police files.
For reasons above stated the motion to suppress must be denied. Since the motion has been denied the additional relief sought by defendant cannot be granted.
Purtill, J.